Order Entered.

David L. Bissett
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:                                      )
                                            )
TRINITY HOMES, LLC,                         )   Case No. 19-bk-1035
                                            )
         Debtor.                            )   Chapter 7
                                            )

## MEMORANDUM OPINION

On May 1, 2020, the court entered an order granting the motion of Thomas H. Fluharty (the "Trustee") to conclude sales of certain of the Debtor's personal property. Based upon its approval of the Trustee's motion, the court subsequently entered another order denying as moot a motion for stay relief filed by 21st Century Mortgage Corporation ("21st Mortgage"). 21st Century's motion involved the same property at issue in the Trustee's motion. The court delivered its ruling upon those matters orally during a telephonic hearing on April 21, 2020. On May 13, 2020, 21st Century filed a notice of appeal of the court's orders. To create a more robust record for the District Court, the court issues this memorandum opinion restating its justification for granting the Trustee's motion and mooting 21st Century's motion.

## I.  BACKGROUND

Prepetition, the Debtor operated a business selling mobile, manufactured, and modular homes. 21st Century financed the Debtor's operation and held a security interest in the Debtor's inventory, among other collateral. On December 9, 2019, the Debtor filed its voluntary petition for relief under Chapter 7 of the Bankruptcy Code. At that time, the Debtor was party to at least six incomplete sales transactions, which formed the basis of the Trustee's motion.

The Trustee identified the sales by purchaser surname, as follows: the Golden sale, the Frazier sale, the Stout sale, the Grogg sale, the Scott sale, and the Huff sale. Notably, each purchaser paid the Debtor tens of thousands of dollars for their respective homes. In that regard, the Trustee asserts in his motion that Stephanie Golden paid the Debtor $63,950; Karen Frazier

1

paid the Debtor $187,250; Richard J. Stout paid $55,624.50; Clifford and Tina Grogg paid the Debtor $97,615; Iggy Scott paid the Debtor $2,081.42; and Ronald and Kay Huff paid the Debtor $81,508.80.

On March 11, 2020, the Trustee filed his motion seeking to complete the sales. On April 3, 2020, 21st Century filed its opposition to the Frazier, Stout, and Scott sales and sought stay relief as to the homes purportedly sold to Frazier, Stout, and Scott. In addition to the Trustee, Frazier, Stout, and Scott objected to 21st Century's motion seeking relief from the automatic stay. On the eve of the court's April 21 hearing to consider the motions, 21st Century and the Trustee submitted an agreed order regarding the Trustee's completion of the Golden, Grogg, and Huff sales.

## II. ANALYSIS

The dispute revolves around whether the Debtor—now the Trustee—sufficiently identified homes sold to Frazier, Stout, and Scott such that the Trustee may now complete those transactions. At bottom, the Trustee contends that his review of the Debtor's records and his examination of the Debtor leads to the conclusion that the Debtor achieved a meeting of the minds with Frazier, Stout, and Scott sufficient to complete the sales. Indeed, Frazier contends that the Debtor itself at its meeting of creditors identified the home she purchased. Likewise, Stout contends that he and the Debtor formed their agreement, at least in part, based upon his physical inspection of the home at the Debtor's property. Finally, Scott contends that he should not be made to suffer for the Debtor's purported mistake. Like the other purchasers, he believes that there was a meeting of the minds regarding the home he purchased.

21st Century contends that the three homes the Trustee seeks to transfer were not properly identified such that they remain collateral of 21st Century. Specifically, 21st Century asserts that a valid sale requires the identification of the property sold using an accurate serial number. Accordingly, it argues that because the sale contracts for Frazier, Stout, and Scott did not identify the subject homes by accurate serial number, the court cannot grant the Trustee's motion in those respects and should grant it stay relief to repossess and liquidate the homes. In that regard, 21st Century relies up W. Va. Code § 46-2-502(3).

According to the Uniform Commercial Code ("UCC"), "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." W. Va. Code § 46-2-204(1). Notably, however, a contract for the sale of goods exceeding $500 in value must be in writing "sufficient to indicate

that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . ." W. Va. Code § 46-2-201(1). "A writing is not insufficient because it omits or incorrectly states a term agreed upon . . . ." *Id.*

Despite a seller's repudiation, failure to deliver, or insolvency, "a buyer who has paid a part or all of the price of the goods in which he has a special property under [W. Va. Code § 46-2-501] may . . . recover them from the seller" if "the seller repudiates or fails to deliver as required by the contract; or (b) . . . the seller becomes insolvent within ten days after receipt of the first installment on their price." W. Va. Code § 46-2-502(1). Notably, however, "identification can be made at any time and in any manner explicitly agreed to by the parties." W. Va. Code § 46-2-501(1).

The scope of Article 2 of the UCC is limited to the sale of goods. W. Va. Code. § 46-2-102. Notably, nothing in Article 2 impairs the rights of a seller's creditors under Article 9 of the UCC. W. Va. Code § 46-2-402(3)(a). As is particularly relevant here, "a buyer in ordinary course of business . . . takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence." W. Va. Code § 46-9-320(a).

Based upon the record before the court and the applicable law, it believes that the Debtor and Frazier, Stout, and Scott, respectively, had contracts for sales of certain of the Debtor's inventory. The court is confident in that regard that the sales were of the property identified in the Trustee's motion. Specifically, all parties to the respective contracts agree that the sales sought to be concluded by the Trustee involved the subject property despite one or more of the written contracts not including an accurate serial number for the home being sold. Indeed, the Debtor representative purportedly acknowledged one or more of these agreements at the meeting of creditors, and the Trustee came to his conclusion after examining the Debtor's books and records. It is thus clear to the court that the parties to the contracts explicitly agreed as to the identification of the respective property being purchased by Frazier, Stout, and Scott.

Despite 21st Century's arguments to the contrary, the court does not believe that valid, enforceable contracts in this context depend on identifying by serial number the property sold. Indeed, as 21st Century notes, it likely would have been easy for the Debtor to complete the written contracts with respective serial numbers, but the court does not perceive that as a requirement. Additionally, the court believes that 21st Century's rights are limited by Article 9 of the UCC. The court views the importance of that in two contexts. First, Frazier, Stout, and Scott take free and

3

clear of 21st Century's security interest.  Second, and not central to its disposition, it is not clear what standing 21st Century has in objecting to the respective sales using Article 2 of the UCC when it is neither the seller nor the buyer and there is agreement between them regarding what property was sold.

### III. CONCLUSION

For the reasons stated herein, and on the record previously, the court entered its orders dated May 1 and May 11, 2020.