Order Entered.

David L. Bissett
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:                                      )
                                            )
TRINITY HOMES, LLC,                         )      Case No. 19-bk-1035
                                            )
           Debtor.                          )      Chapter 7
                                            )

**MEMORANDUM OPINION**

On June 30, 2020, the court entered an order granting the motion of Thomas H. Fluharty (the "Trustee") to compromise the claim filed against the estate by Pendleton Community Bank. In conjunction with its approval of the Trustee's motion, the court overruled the lone objection to the motion, which 21st Mortgage Corporation filed on June 29, 2020.[1]  The court delivered its ruling upon the motion orally during a telephonic hearing on June 30, 2020.  On July 14, 2020, 21st Mortgage filed a notice of appeal of the court's order.  To create a more robust record for the District Court, the court issues this memorandum opinion restating its justification for overruling 21st Mortgage's objection and granting the Trustee's motion.

I.  BACKGROUND

Prepetition, Trinity Homes, LLC (the "Debtor"), operated a business selling mobile, manufactured, and modular homes.  The Debtor's principal place of business was located at 644 Andell Road, Bridgeport, West Virginia (the "Property").  Notably, however, title to that property was vested in a related, non-debtor entity, Endeavor Investments, LLC.  21st Mortgage financed the Debtor's operation and held a security interest in the Property, among other collateral.

On April 5, 2018, Pendleton Community Bank loaned $130,000 to the Debtor for the purchase of a modular home described as "Mainstreet, Model No. 350MS-Mainstreet-00000R C/S/

---

[1] To be clear, 21st Century first objected to the Trustee's motion on June 26, 2020 but amended its objection on June 29, 2020, after Pendleton Community Bank filed a response in support of the anticipated compromise.

1

Ranch (M), Serial Number 50345 (the "Modular Home"). To secure the Debtor's repayment of the $130,000, the Debtor executed and Pendleton Community Bank recorded a financing statement giving Pendleton a security interest in the Modular Home. Notably, however, Pendleton's interest in the Modular Home is not also secured by a deed of trust. On December 9, 2019, the Debtor filed its voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

On March 11, 2020, the trustee filed a motion to sell the Property. Therein, he identified three liens to be paid from the sale proceeds.[2] According to his motion, the trustee proposed to sell the Property for $844,000, and the proposed sale would result in net proceeds of $149,300. Notably, the sales contract provided for a closing date forty-five days from the court's approval of the sale. On April 8, 2020, the court entered its order approving the sale. According to the trustee, Pendleton Community Bank first asserted a lien on the Modular Home during April but after the court approved the sale of the Property. With the closing of the sale of the Property imminent, the trustee endeavored to resolve Pendleton's claim so as to not lose the sale. On June 12, 2020, Pendleton formally made its claim against the Modular Home and the trustee almost immediately—on June 19, 2020—proposed the extant settlement to the court.

## II. ANALYSIS

Pendleton Community Bank initiated the underlying contested matter by filing its June 12, 2020 motion to permit its late-filed proof of claim because it allegedly did not receive timely notice of the Debtor's bankruptcy case. Notably, Pendleton also did not receive notice of the Chapter 7 trustee's motion to sell the Property, which is where the Modular Home currently sits. Pendleton contends that it possesses a lien upon the Modular Home securing the repayment of approximately $92,983.26, but it agrees to resolve its dispute against the estate by accepting $80,000 in full satisfaction of its secured claim. According to the trustee, the settlement is fair and reasonable for two principal reasons. First, it satisfies the purported secured claim of Pendleton Community Bank for almost $13,000 less than the amount purportedly owed without having to litigate over the amount owed and the issue of whether Pendleton possesses a properly secured claim. More importantly, it removes any potential impediment to the trustee's sale of the Property.

---

[2] Notably, 21st Mortgage holds two of the liens upon the Property. By order dated May 26, 2020, however, the court approved the trustee's settlement with 21st Mortgage whereby 21st Mortgage agreed to release its second-priority lien upon the Property.

2

Pendleton Community Bank supports the resolution. In support of the proposed settlement, it directs the court's attention to its pre-petition agreement with the Debtor that it may remove the Modular Home upon Debtor's default of the loan. That is critical in its view based upon West Virginia law governing "fixtures." As noted at the outset, only 21st Mortgage objects to the proposed resolution. It contends that the court should not approve the settlement because Pendleton Community Bank is not properly secured in the Modular Home. Specifically, 21st Mortgage asserts that Pendleton Community Bank's financing statement is ineffective to maintain a security interest in the Modular Home because the Modular Home is affixed to the Property upon a concrete block foundation. 21st Mortgage therefore argues that Pendleton Community Bank can only hold a lien upon the Modular Home with a perfect deed of trust, which it admittedly does not possess. At bottom, that dispute surrounds whether the Modular Home is a fixture. However, the issue before the court is whether the proposed settlement is reasonable, and the court is not required to rule on the merits of the underlying dispute.

Rule 9019(a) provides that the court may approve a settlement "on motion by the trustee and after notice and a hearing." "Among the factors the bankruptcy judge should consider in his analysis are the litigation's probability of success, the litigation's complexity, and the litigations attendant expense, inconvenience, and delay (including the possibility that disapproving the settlement will cause wasting of assets)." *In re Fort Wayne Telsat, Inc.*, 489 B.R. 773, 778 (Bankr. N.D. Ind. 2010) (quoting *LaSalle Nat'l Bank v. Holland*, 841 F.2d 159, 161-62 (7th Cir. 1987)); *see In re D&R Distributors, Inc.*, Case No. 14-bk-565, 2016 WL 4821257, at *2 (Bankr. N.D.W. Va. Sept. 12, 2016) (internal quotation omitted) (noting that "courts review Rule 9019 motions to compromise in light of four factors: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of the creditors").

In adjudging a compromise, "the bankruptcy judge may not simply accept the trustee's word that the settlement is reasonable, nor may he merely 'rubber-stamp' the trustee's proposal. The bankruptcy judge must apprise himself of all facts necessary to evaluate the settlement and make an 'informed and independent judgment about the settlement." *In re Fort Wayne Telsat, Inc.*, 489 B.R. at 779 (quoting *LaSalle Nat'l Bank*, 841 F.2d 162. "Nonetheless, 'the court does not substitute its own judgment as to what would be best for the estate but rather determines if the trustee's proposed agreement falls within reasonable judgment under the circumstances of the

case.'" *In re D&R Distributors, Inc.*, 2016 WL 4821257, at *2 (quoting *Friedman v. Riffin (In re Riffin)*, No. 10-11248-DK, 2010 WL 3260131, at *4 (Bankr. D. Md. Aug. 18, 2010)).

Here, the court finds the trustee's proposed settlement to be within the bounds of what is reasonable in the context of this dispute and the case generally. Specifically, the court cannot say based upon the record before it that the trustee would have a high probability of success in litigating a defense to Pendleton Community Bank's proof of claim. Despite 21st Mortgage's argument to the contrary, the court cannot say with any reasonable certainty that Pendleton lost its security interest in the Modular Home when the Debtor affixed it to the Property via a block foundation. For instance, the court cannot presently perceive the difficulty in disconnecting and removing the Modular Home from the block foundation. It would likely need to hear extensive testimony in that regard, including perhaps from one or more expert witnesses. Moreover, the Debtor agreed prepetition that Pendleton Community Bank could remove the Modular Home in the event of default. That issue bears on both the likelihood of success and the litigation's complexity. Notably, however, the court need not resolve the merit of that dispute in adjudging whether the settlement is reasonable. The fact that the issue is not readily resolvable on its merit is the chief concern in adjudging the reasonableness of the proposed settlement.

More importantly in the court's mind, the expense, inconvenience, and delay attendant to the potential litigation, as well as the paramount interest of creditors, lead to the inexorable conclusion that the settlement is reasonable. Notably, the trustee articulated both in his motion and at the hearing on the matter that he believes his proposed resolution benefits the bankruptcy estate because it resolves Pendleton's claim for less than its face amount and removed any potential impediment to his sale of the Property, which results in a significant net benefit to the bankruptcy estate. Additionally, the settlement before the court obviates likely significant administrative expenses of the estate, including attorney fees and potentially compensation for additional professionals like an expert witness.

### III. CONCLUSION

For the reasons stated herein, and on the record previously, the court entered its order dated June 30, 2020.